UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                        |   |                          |
|------------------------|---|--------------------------|
| MARCELLO ALMEIDA,      | ) |                          |
| Petitioner,            | ) |                          |
| v.                     | ) | Civil No. 19-10261-LTS   |
| BRAD COWIN,            | ) |                          |
| Respondent.            | ) |                          |

ORDER ON MOTION TO DISMISS (DOC. NO. 20)

September 11, 2019

SOROKIN, J.

Marcello Almeida, a prisoner at the Massachusetts Correctional Institution in Norfolk, Massachusetts, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondent seeks dismissal of the petition, arguing that the claim Almeida presents is procedurally defaulted. Because the respondent is correct, Almeida's petition is DISMISSED.

I.      BACKGROUND

In October 2015, following a jury trial in Plymouth County Superior Court, Almeida was convicted of first-degree murder and sentenced to life imprisonment without the possibility of parole. Commonwealth v. Almeida, 96 N.E.3d 708, 710 (Mass. 2018); Doc. No. 1 at 1.[1] The criminal charge arose after Almeida admittedly stabbed a woman to death and then unsuccessfully attempted suicide. Almeida, 96 N.E.3d at 712. Almeida and the victim had been in a turbulent relationship, and they had a child together. Id. at 711-12.

---

[1] Citations to documents appearing on the Court's electronic docketing system reference the entry number and page number assigned by ECF

In the hospital after his arrest, Massachusetts State Trooper Robert Lima read Almeida his Miranda rights in Portuguese, Almeida's native language. Id. at 713. Almeida said he would talk, then changed his mind after Lima informed him that his lawyer had been notified and had advised Almeida not to speak. Id. Half an hour later, Almeida initiated a conversation with Lima, first in broken English, then in Portuguese. Id. After talking about his siblings, his job, and his children, Almeida said: "[W]hat did I go do . . . I killed my woman." Id. According to Lima, who testified at trial, Almeida seemed upset and began to cry. Id.

In Portuguese, Lima reminded Almeida of his Miranda rights, of his lawyer's advice, and that he was speaking to a police officer, and "told [him] to stop talking." Id. Almeida responded by saying he "just wanted to talk to [Lima]," but said nothing further. Id. Lima described the entire exchange as lasting a few minutes and characterized Almeida as "very alert and cognizant of his surroundings and . . . aware of what he was saying." Id. When examined by Almeida's counsel at trial, Lima agreed that Almeida had not told him when, how, or why he had killed the victim. Id.

Almeida also testified at trial. Id. He said "he loved the victim," and that previous fights between them "were never physical." Id. In describing the circumstances surrounding her death, Almeida testified that the victim knocked on his door, that he feared she would leave without talking to him, that he retrieved a knife intending to slash her tires and prevent her from going, and that he stabbed her after she "told him she did not love him anymore and that she had been with another man." Id. at 713-14. The prosecutor cross-examined Almeida about his failure to mention this explanation in conversations he had with various people, including Lima, in the wake of the killing. Doc. No. 29 at 148-54. Trial counsel objected during this line of questioning, without stating the basis for his objection. Id. at 151. Later, in a sidebar discussion

after the prosecutor suggested Almeida had adopted the explanation only after learning a rape kit test of the victim suggested she had had sex before she died, trial counsel raised a concern that the prosecutor's questions might, in part, implicate conversations between Almeida and counsel. Id. at 151.  In explaining his view, trial counsel said questions about Almeida's earlier omissions were "probably . . . appropriate," but also referenced Almeida's rights to counsel and to silence. Id. at 152-53.  On redirect examination, trial counsel asked Almeida why he had not previously mentioned the victim's alleged statement about another man, suggesting via a leading question that the revelation had been embarrassing for Almeida.  Id. at 155.

At the conclusion of the trial, Almeida's lawyer urged the jury to convict Almeida of manslaughter, rather than murder.  Doc. No. 21-1 at 15.  In her closing argument, the prosecutor compared Almeida's statement to Lima with his trial testimony, urging the jury to reject the heat-of-passion defense.  In particular, she emphasized Almeida's failure to tell Lima that he had killed the victim "because she cheated on [him]" or "because she told [him] she had sex with another man."  Id. at 713.  Almeida's counsel objected at trial to various statements in the prosecutor's closing argument which he suggested misstated the evidence or impermissibly shifted the burden of proof, and he requested a mistrial.  Doc. No. 21-1 at 39-42.[2]  He did not, however, invoke the Fifth Amendment or otherwise object at that time to the prosecutor's comments about things Almeida omitted from his statement to Lima.  Id.

---

[2] The respondent attached to his motion to dismiss the portion of the trial transcript containing the prosecutor's complete closing argument and the entire sidebar during which Almeida's counsel raised objections to the closing, the prosecutor responded, and the trial court overruled the objections.  Doc. No. 21-1 at 15-45.  After reviewing the motion, the supporting exhibits, and Almeida's response, the Court ordered the respondent to supplement his submission with certain additional transcript excerpts, Doc. No. 28, which he promptly supplied, Doc. No. 29.

Almeida timely appealed his conviction and sentence.  Id. at 11.  On May 17, 2018, the Supreme Judicial Court ("SJC") affirmed, addressing and rejecting Almeida's challenges to the prosecutor's closing argument, the admission of prior bad acts evidence, and certain aspects of the trial court's jury instructions.  Almeida, 96 N.E.3d at 714-18.  Almeida did not petition the United States Supreme Court for certiorari, nor did he pursue any collateral challenges to his conviction in state court via a motion for a new trial.  Instead, he filed a timely pro se federal habeas petition raising a single constitutional challenge:  the denial of his right to due process arising when the trial court permitted the prosecutor "to argue that [Almeida's] trial testimony was [i]n effect a recent fabrication" and to "zero in on [Almeida's] invocation of his right to silence."  Doc. No. 1 at 5.

The respondent's motion to dismiss the petition is fully briefed and ripe for resolution.

II.     LEGAL STANDARDS

A state prisoner is entitled to habeas relief in federal court only if he has first exhausted his available remedies in state court.  28 U.S.C. § 2254(b); see O'Sullivan v. Boerkel, 526 U.S. 838, 839 (1999); Mele v. Fitchburg Dist. Court, 850 F.2d 817, 819 (1st Cir. 1988).  To exhaust a claim, a petitioner must "fairly present" it to the state courts, "thereby alerting [the state courts] to the federal nature of the claim."  Baldwin v. Reese, 541 U.S. 27, 29 (2004); see O'Sullivan, 526 U.S. at 848; Coningford v. Rhode Island, 640 F.3d 478, 482 (1st Cir. 2011).  Failure to exhaust federal claims in state court may result in procedural default of those claims for habeas purposes.  Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991).

Even where a petitioner has fairly presented his federal claims in state court, procedural default occurs when the state court refuses to address such claims on the merits because of "a state-law ground that 'is independent of the federal question and adequate to support the

4

judgment.'" Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman, 501 U.S. at 729); accord Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010); see Martinez v. Ryan, 566 U.S. 1, 9 (2012) ("[A] federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule."). The procedural default doctrine is "designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." Martinez, 566 U.S. at 9.

Massachusetts law imposes "a routinely enforced, consistently applied contemporaneous objection rule." Burks v. Dubois, 55 F.3d 712, 716 (1st Cir. 1995); see Commonwealth v. Lavoie, 981 N.E.2d 192, 197 n.8 (Mass. 2013); Mass. R. Crim. P. 22. The rule is "firmly established and consistently followed," Martinez, 566 U.S. at 9, and the First Circuit repeatedly has held that it constitutes "an independent and adequate state procedural ground" that bars federal habeas review. Janosky, 594 F.3d at 44. Although Massachusetts appellate courts sometimes review claims for "miscarriage of justice" despite a failure to contemporaneously object, such discretionary and limited review "does not in itself indicate that the court has determined to waive" the contemporaneous objection rule and consider the underlying claim on its merits. Tart v. Massachusetts, 949 F.2d 490, 496 (1st Cir. 1991); accord Janosky, 594 F.3d at 44; Burk, 55 F.3d at 726 n.2. Federal courts will infer waiver of such a state procedural rule only if the state court makes it "reasonably clear that its reasons for affirming a conviction rest upon its view of federal law," rather than the relevant state procedural requirement. Doucette v. Vose, 842 F.2d 538, 540 (1st Cir. 1988) (emphasis added).

A petitioner may obtain review of defaulted claims only if he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate

5

that failure to consider the[] claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750; accord Martinez, 566 U.S. at 10; Janosky, 594 F.3d at 44. To demonstrate cause sufficient to excuse default, a petitioner must prove "some objective factor external to the defense impeded counsel's [or petitioner's] efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986); accord Coleman, 501 U.S. at 753. "[I]neffective assistance of counsel, so severe that it violates the Sixth Amendment, may constitute cause to excuse a procedural default," but only if "the petitioner exhausted his ineffective assistance claim in state court." Janosky, 594 F.3d at 44 (citing Murray, 477 U.S. at 488-89).

To show "actual prejudice," a petitioner must demonstrate that the alleged errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 168 (1982); accord Ortiz v. Dubois, 19 F.3d 708, 714 (1st Cir. 1994).

If a petitioner seeks to establish a "fundamental miscarriage of justice" as an alternative to showing cause and prejudice, he must demonstrate "actual innocence." See Schlup v. Delo, 513 U.S. 298, 324 (1995); Janosky, 594 F.3d at 46. This requires "new reliable evidence" that would make it more likely than not that "no reasonable juror would find [the petitioner] guilty beyond a reasonable doubt." House v. Bell, 547 U.S. 518, 538 (2006); Schlup, 513 U.S. at 324.

III. DISCUSSION

The solitary claim advanced in Almeida's federal petition arises from the prosecutor's reliance on things Almeida omitted from his statements to Lima after his arrest but included in his testimony at trial. Doc. No. 1 at 5. Almeida, however, never "fairly presented" such a challenge to the trial court, in federal constitutional terms.

6

Trial counsel's only objections to the relevant portion of the prosecutor's cross-examination of Almeida were either made summarily, without offering any basis (constitutional or otherwise), or were confusing and directed at issues other than the interplay between Almeida's right to silence and his voluntary statements to both Lima and the jury. See Doc. No. 29 at 151-53 (no grounds stated for initial objection, then reference to "right to silence" offered during sidebar focused on whether attorney-client communications were implicated by prosecutor's questions). Indeed, at least twice during the trial, counsel endorsed the propriety of the prosecutor's exploration of omissions from Almeida's statement to Lima. See id. at 8-9 (in requesting jury instruction on right to silence, counsel argued that jurors "can consider . . . what [Almeida] didn't say during the conversation" with Lima, so long as they also "look at his state of mind" at the time); id. at 152 (at sidebar, counsel called the relevant question "probably . . . appropriate"); see also id. at 58 (counsel cross-examined Lima about omissions from Almeida's statement to him before the prosecutor broached the subject with any witness). Though trial counsel made a number of objections to the prosecutor's closing arguments, none of them concerned the prosecutor's comments about the relevant omissions. Doc. No. 21-1 at 39-42. Thus, Almeida failed to preserve the claim for appellate review pursuant to Massachusetts law. Burks, 55 F.3d at 716.

Although the SJC did not explicitly note Almeida's failure to make a contemporaneous objection, it analyzed the issue on direct review applying only state law—both state-court decisions and state rules of evidence—and applied the "miscarriage of justice" standard applicable in Massachusetts to waived claims. Almeida, 96 N.E.3d at 715-17. In these circumstances, Almeida's failure to object to the alleged error or misconduct at the time it occurred renders any related federal claims procedurally defaulted. See Janosky, 594 F.3d at 44.

7

The SJC's "miscarriage of justice" review does not excuse Almeida's waiver nor salvage the claim for purposes of this Court's review where nothing in the SJC's decision supports an inference that it disposed of the claim based on "its view of federal law." Id.; see Doucette, 842 F.2d at 540. Thus, unless Almeida can show cause and prejudice for his default or demonstrate actual innocence, he is not entitled to federal review of the defaulted claim. Schlup, 513 U.S. at 324; Coleman, 501 U.S. at 750.

Rather than acknowledging his default and citing an "objective factor external to the defense" which caused it, Murray, 477 U.S. at 488, or advancing another basis upon which it might be excused, Almeida denies that there is a procedural bar to this Court's review of the claim.[3] See Doc. No. 24 at 2 (urging that his trial counsel's stated challenges to the closing argument "clearly qualifie[d] as an objection that preserve[d]" the issue for appellate and habeas review). He does not allege his trial counsel was ineffective in this or any other regard, nor has he exhausted any ineffectiveness claims in state court. Similarly, he has not shown, and the record does not support a finding, that the relevant comments from the prosecutor's closing argument "infect[ed] his entire trial with error of constitutional dimensions."[4] Frady, 456 U.S. at

---

[3] His opposition to the pending motion also might be read as an attempt to expand the scope of the federal claims Almeida wishes to pursue before this Court. See Doc. No. 24 at 1 (accusing "the overzealous prosecutor" of "insert[ing] her own opinion, and substantially misquot[ing] testimonial evidence"); id. at 2 (suggesting "the prosecutor impermissibly encouraged the jury to ponder on wild speculations" and used "highly prejudicial slants . . . to substantially confuse the jury"). The petition as Almeida drafted it contains no such broad attack on the closing argument, and the SJC disposed of this more general challenge to the closing argument in a footnote, finding that any improper comments had been satisfactorily remedied by the trial court's curative instructions. Almeida, 96 N.E.3d at 716 n.4. It is difficult to imagine this Court reaching a different conclusion, even if Almeida had presented that broader claim here, and assuming this Court could reach its merits, given the stringent and highly deferential standard applicable to such claims on federal habeas review.

[4] Indeed, the facts recounted in detail by the SJC overwhelmingly support that court's finding that the allegedly improper comments by the prosecutor created no risk of a miscarriage of justice, let alone a substantial one.

168. Finally, Almeida has not presented "new reliable evidence" of his innocence. Schlup, 513 U.S. at 324. Under these circumstances, there is no basis for excusing his procedural default, leaving his federal claim outside the bounds of this Court's habeas review.[5]

IV. CONCLUSION

For the foregoing reasons, the motion to dismiss (Doc. No. 20) is ALLOWED, and Almeida's federal petition (Doc. No. 1) is DISMISSED.[6]

                                  SO ORDERED.

                                  /s/ Leo T. Sorokin
                                United States District Judge

---

[5] Even if Almeida's claim were not procedurally defaulted, or if he could establish a basis for excusing the default, Almeida would fare no better after a review of his claim on its merits. In the circumstances presented here, the SJC's resolution of this claim does not appear to contravene or unreasonably apply any clearly established Supreme Court precedent. See Anderson v. Charles, 447 U.S. 404, 408 (1980) (holding prohibition on impeachment of testifying defendant with prior invocation of right to silence "does not apply to cross-examination that merely inquires into prior inconsistent statements," as "the defendant has not remained silent at all" regarding "the subject matter of his statements" made "voluntarily . . . after receiving Miranda warnings").

[6] As "reasonable jurists" could not "debate whether . . . the petition should have been resolved in a different manner," Slack v. McDaniel, 529 U.S. 473, 484 (2000), no certificate of appealability shall issue. Almeida's federal claim is doomed by his failure to raise a contemporaneous objection before the state trial court, and he has cited no circumstances which would justify excusing his procedural default.